**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LINDSEY BUERO, Individually and on behalf of all similarly situated, | No. 20-35633 |
| *Plaintiff-Appellant,* | D.C. No. 3:19-cv-00974-MO |
| v. | |
| AMAZON.COM SERVICES, INC., DBA Amazon Fulfillment Services, Inc., a foreign corporation; AMAZON.COM, INC., a foreign corporation, | OPINION |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Filed March 10, 2023

Argued and Submitted November 9, 2021
Submission Withdrawn December 22, 2021
Resubmitted March 3, 2023
Portland, Oregon

Before:  Susan P. Graber and Morgan Christen, Circuit Judges, and Raner C. Collins,[*] District Judge.

Per Curiam Opinion

---

## SUMMARY[**]

### Diversity / Employee Wage and Hour Laws

The panel affirmed the district court's judgment on the pleadings in favor of Defendants Amazon.com Services, Inc. and Amazon.com, Inc., in a class action alleging that Defendants' failure to compensate employees for time spent waiting for and passing through mandatory security screenings before and after work shifts and off-premises meal breaks violated Oregon's wage and hour laws.

The panel had certified the following issue to the Oregon Supreme Court: "Under Oregon law, is time that employees spend on the employer's premises waiting for and undergoing mandatory security screenings compensable?"  In response, the Oregon Supreme Court held that Oregon law aligns with federal law regarding what activities are compensable.  Therefore, time that employees spend on the employer's premises waiting for and undergoing mandatory security screenings before or after

---

[*] The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

their work shifts is compensable only if the screenings are either (1) an integral and indispensable part of the employees' principal activities, or (2) compensable as a matter of contract, custom, or practice.

Plaintiff's complaint did not allege that either of the identified exceptions applied. Accordingly, the panel held that the district court properly granted judgment on the pleadings to Defendants. Although the Oregon Supreme Court's opinion did not address separately or directly Plaintiff's meal-period claim, the logic of that opinion yielded the same result. Under both federal and state law, the test is whether an employee performed work duties during the meal period. And under both Oregon and federal regulations, employees on meal breaks must be relieved from duty. Because the Oregon Supreme Court squarely held that Oregon law aligns with federal law regarding what activities are compensable and because Plaintiff failed to allege that undergoing a mandatory security screening was "an integral and indispensable part" of an employee's principal activities, her claim failed.

---

## COUNSEL

Lisa T. Hunt (argued), Law Office of Lisa T. Hunt LLC, Lake Oswego, Oregon; David A. Schuck, Schuck Law LLC, Vancouver, Washington; for Plaintiff-Appellant.

Michael E. Kenneally (argued) and David B. Salmons, Morgan Lewis & Bockius LLP, Washington, D.C.; Richard G. Rosenblatt, Morgan Lewis & Bockius LLP, Princeton, New Jersey; Sarah J. Crooks, Perkins Coie LLP, Portland, Oregon; for Defendants-Appellees.

# OPINION

PER CURIAM:

Plaintiff Lindsey Buero filed a class action against Defendants Amazon.com Services, Inc. and Amazon.com, Inc., alleging that Defendants' failure to compensate employees for time spent waiting for and passing through mandatory security screening before and after work shifts and breaks violates Oregon's wage and hour laws. The district court granted judgment on the pleadings to Defendants, and Plaintiff timely appealed to us. Because there was no controlling Oregon precedent on that important and dispositive question of state law, we certified the issue to the Oregon Supreme Court: "Under Oregon law, is time that employees spend on the employer's premises waiting for and undergoing mandatory security screenings compensable?" Buero v. Amazon.com Servs., Inc., 370 Or. 502, 504, 521 P.3d 471, 473 (2022) (en banc).

The Oregon Supreme Court answered that question in the negative:

> Oregon law aligns with federal law regarding what activities are compensable. Therefore, under Oregon law, as under federal law, time that employees spend on the employer's premises waiting for and undergoing mandatory security screenings before or after their work shifts is compensable only if the screenings are either (1) an integral and indispensable part of the employees' principal activities or (2) compensable as a matter of contract, custom, or practice.

Id. at 504, 521 P.3d at 473.[1]  Plaintiff's complaint does not allege that either of the identified exceptions applies. Accordingly, on de novo review, S.F. Apartment Ass'n v. City & County of San Francisco, 881 F.3d 1169, 1175 (9th Cir. 2018), we now hold that the district court properly granted judgment on the pleadings to Defendants.

Although the Oregon Supreme Court's opinion did not address separately or directly Plaintiff's meal-period claim, the logic of that opinion yields the same result.  In addition to requiring security screening when employees arrive at work and leave work, Defendants require employees to undergo security screening if they choose to leave the premises during meal periods and also choose to take belongings with them.  Under Oregon law, employees must be "relieved of all duties" during meal breaks.  Or. Admin. R. 839-020-0050(2)(a)–(b).  That regulation, like the ones that the Oregon Supreme Court discussed, "aligns with" the comparable federal regulation, Buero, 370 Or. at 526–27, 521 P.3d at 485 which requires employees on meal breaks to be "completely relieved from duty," 29 C.F.R. § 785.19(a). Under both federal and state law, the test is whether an employee performed work duties during the meal period. Busk v. Integrity Staffing Sols., Inc., 713 F.3d 525, 531–32 & n.4 (9th Cir. 2013) (federal law), rev'd on other grounds, 574 U.S. 27 (2014); Maza v. Waterford Operations, LLC, 300 Or. App. 471, 478–80, 455 P.3d 569, 573–74 (2019) (Oregon law).  Because the Oregon Supreme Court has squarely held that Oregon law aligns with federal law regarding what activities are compensable, Buero, 370 Or. at 504, 521 P.3d at 473, and because Plaintiff fails to allege that

---

[1] The Oregon Supreme Court's complete answer to our certified question is attached as an appendix.

undergoing a mandatory security screening is "an integral and indispensable part" of an employee's principal activities, see id. at 526–27, 521 P.3d at 485–86, her claim fails. See also id. at 521, 521 P.3d at 482 (ruling that the Bureau of Labor and Industries did not intend "to diverge from federal law regarding what types of activities are compensable").

**AFFIRMED.**

**APPENDIX**

IN THE SUPREME COURT OF THE
STATE OF OREGON

Lindsey BUERO,
individually and on behalf of
all similarly situated,
*Plaintiff,*

*v.*

AMAZON.COM SERVICES, INC.,
dba Amazon Fulfillment Services, Inc.,
a foreign corporation; and
Amazon.com, Inc.,
a foreign corporation,
*Defendants.*

(United States Court of Appeals for
the Ninth Circuit No. 20-35633)
(SC S069135)

En Banc

On certified question from the United States Court of Appeals for the Ninth Circuit; certified order dated December 22, 2021, certification accepted February 16, 2022.

Argued and under advisement June 8, 2022.

Lisa T. Hunt, Law Office of Lisa T. Hunt, LLC, Lake Oswego, argued the cause and filed the briefs for plaintiff. Also on the briefs was David A. Schuck, Vancouver, Washington.

Michael E. Kenneally, Morgan, Lewis & Bockius LLP, Washington DC, argued the cause for defendants. Sarah J. Crooks, Perkins Coie LLP, Portland, filed the brief. Also on the brief were David B. Salmons, Michael E. Kenneally, and Richard G. Rosenblatt, Morgan, Lewis & Bockius LLP, Washington DC and Princeton, New Jersey.

James S. Coon, Thomas, Coon, Newton & Frost, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association. Also on the brief was Kristen Williams, McMinnville.

DUNCAN, J.

The certified question is answered.

Flynn, J., dissented and filed an opinion.

**DUNCAN, J.**

Plaintiff brought a class action against defendants in state court, alleging, among other things, that defendants had violated Oregon's wage laws by failing to pay employees for time spent in mandatory security screenings at the end of their work shifts. Defendants removed the case to federal court and moved for judgment on the pleadings, asserting that the time spent in the security screenings was not compensable. In support of that argument, defendants cited *Integrity Staffing Solutions, Inc. v. Busk*, a case involving a similar claim against defendants, in which the United States Supreme Court held that, under federal law, time spent in the security screenings at issue in that case was not compensable. 574 US 27, 29, 135 S Ct 513, 190 L Ed 2d 410 (2014). Defendants argued that Oregon's wage laws track federal wage laws and, therefore, time spent in the security screenings at issue in this case was not compensable under Oregon law.

The district court agreed with defendants, noting the similarities between Oregon administrative rules enacted by the state's Bureau of Labor and Industries (BOLI) and federal law. Plaintiff appealed to the Ninth Circuit and filed a motion asking that court to certify a question to this court regarding whether time spent in security screenings is compensable under Oregon law. The Ninth Circuit granted the motion and certified the following question: "Under Oregon law, is time that employees spend on the employer's premises waiting for and undergoing mandatory security screenings compensable?" This court accepted the certified question. For the reasons explained below, we conclude that Oregon law aligns with federal law regarding what activities are compensable. Therefore, under Oregon law, as under federal law, time that employees spend on the employer's premises waiting for and undergoing mandatory security screenings before or after their work shifts is compensable only if the screenings are either (1) an integral and indispensable part of the employees' principal activities or (2) compensable as a matter of contract, custom, or practice.

## I.    BACKGROUND

The relevant facts are few. In 2018, plaintiff worked for defendants in a warehouse in Troutdale. In the warehouse,

there was a secured area where merchandise was located. Before entering the secured area, employees could store their personal items in lockers.

When employees left the secured area at the end of their work shifts, they would clock out and then undergo a security screening that defendants used to prevent theft of merchandise from the secured area. There were nine screening lanes. If an employee had not brought any metal items or bags into the secured area at the start of their shift, the employee could leave using one of five "express lanes," in which they would simply walk through a metal detector. If an employee had brought metal items but no bags into the secured area, the employee could use one of two "disbursement lanes," in which they would walk through a metal detector and slide their metal items down sloped ramps next to the detector. If an employee had brought a bag into the secured area, the employee had to use one of two lanes, in which they would walk through a metal detector and put their bag on a conveyor belt for x-ray screening. If an employee set off a metal detector in any of the lanes, a security guard with a handheld metal detector would check the employee's person for merchandise.

After passing through the screening, employees could remain in the warehouse for a variety of reasons, including to use the lockers, a breakroom, and phones and computers provided by defendants. To leave the warehouse, employees would swipe their badges and pass through turnstiles at the exits.

## II.   ANALYSIS

The security screenings at issue in this case are similar to the screenings at issue in *Integrity Staffing*. As mentioned, in that case, the Supreme Court held that time spent in the screenings was not compensable under federal law. *Integrity Staffing*, 574 US at 29. Because the question in this case requires us to determine whether Oregon law mirrors federal law, we begin with a review of the evolution of federal and state wage laws, looking first at federal law (specifically, the Fair Labor Standards Act (FLSA), as modified by the Portal-to-Portal Act and as construed by Supreme Court case law) and then to Oregon's wage statutes and

administrative rules (specifically, ORS 653.010(11), which concerns "work time," and administrative rules that define "hours worked," OAR 839-020-0004 and OAR 839-020-0040 through 839-020-0046).

A.    *Relevant Law*

     1.    *Federal law: The FLSA and the Portal-to-Portal Act*

      Congress enacted the FLSA in 1938. Pub L 75-718, 52 Stat 1060 (1938) (codified as amended at 29 USC §§ 201-219). The FLSA established the first federal minimum wage and required employers to pay overtime wages for employment beyond the statutorily set workweek. *Id.* §§ 6-7, 52 Stat at 1062-63.

      Although the FLSA set wage requirements, the FLSA did not specify what types of activities were compensable. Shortly after the enactment of the FLSA, questions regarding what activities were compensable came before the Supreme Court. In *Tennessee Coal Co. v. Muscoda Local*, iron-ore miners argued that time they spent traveling underground in the mines to and from their work site had to be compensated as "work" time. 321 US 590, 592, 64 S Ct 698, 88 L Ed 949 (1944). The Court agreed. *Id.* at 603. The Court explained that "work" means "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.* at 598. Then, in *Anderson v. Mt. Clemens Pottery Co.*, plant workers argued, among other things, that time they spent walking from the timeclock to their work site within their employer's eight-acre plant was compensable. 328 US 680, 682-84, 66 S Ct 1187, 90 L Ed 1515 (1946). The Court agreed, holding that "hours worked" "includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Id.* at 690-91. Thus, in *Tennessee Coal* and *Anderson*, the Court construed "work" and "hours worked" broadly to cover activities in addition to the principal activities for which an employee is employed. Specifically, the Court construed those terms to include time employees spent traveling on their employers' premises to and from the location of their principal work activities.

The year after *Anderson*, Congress responded to the Supreme Court's broad reading of the FLSA by passing the Portal-to-Portal Act of 1947. Pub L 80-49, 61 Stat 84 (codified as amended at 29 USC §§ 251-262). In a statement of facts accompanying the act, Congress stated that the FLSA "has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees," and that interpretation had created "wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers" that would have a wide range of serious adverse consequences on employers, employees, the courts, the government, and the economy as a whole. *Id.* § 1(a), 61 Stat at 84.

To limit those consequences, the Portal-to-Portal Act provided employers with relief from existing claims and exempted them from future claims for compensation for certain activities, including, but not limited to, the activities that had been at issue in *Tennessee Coal* and *Anderson*. Section 4 of the Portal-to-Portal Act provides, in part:

"(a)  Except as provided in subsection (b), no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, * * * on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee * * *[:]

"(1)  walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform[;] and

"(2)  activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

"(b)  Notwithstanding the provisions of subsection (a) which relieve an employer from liability and punishment with respect to an activity, the employer shall not be so relieved if such activity is compensable by either[:]

"(1)   an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

"(2)   a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer."

*Id*. § 4, 61 Stat at 86-87.[1] Thus, unless an exception applies, an employee cannot hold an employer liable under the FLSA, as modified by the Portal-to-Portal Act, for failing to pay an employee either for time the employee spent "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" or for time spent in "activities which are preliminary to or postliminary to said principal activity or activities," if those preliminary or postliminary activities occur either before the employee commences or after the employee ceases the employee's principal activity or activities. *Id*. § 4(a), 61 Stat at 87.

In subsequent cases, the Supreme Court interpreted and applied the Portal-to-Portal Act. In *Steiner v. Mitchell*, the Court ruled that

"activities performed either before or after the regular work shift * * * are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1) [which governs time spent traveling to and from the location of an employee's principal activities]."

350 US 247, 256, 76 S Ct 330, 100 L Ed 267 (1956). Applying that rule, the Court concluded that changing clothes and showering were an integral and indispensable part of the

---

[1] Section 4 of the Portal-to-Portal Act provided employers with relief from future claims, while section 2 provided employers with retroactive relief from existing claims. Portal-to-Portal Act of 1947, § 2, 61 Stat at 85-86.

principal activities of battery plant employees whose job duties required "extensive use of dangerously caustic and toxic materials." *Id.* at 248, 256; *see also Mitchell v. King Packing Co.*, 350 US 260, 263, 76 S Ct 337, 100 L Ed 282 (1956) (applying the integral and indispensable test and concluding that knife sharpening was an integral and indispensable part of the principal activities of butchers).

To summarize, under the FLSA, as modified by the Portal-to-Portal Act and as subsequently construed by the Court, time that employees spend engaged in activities before or after their regular work shifts is not compensable, unless those activities are (1) an integral and indispensable part of the employees' principal activities or (2) compensable as a matter of contract, custom, or practice. Accordingly, in *Integrity Staffing*, the Supreme Court held that time that employees spent waiting for and undergoing the security screenings at issue in that case—which the court held was time spent in "postliminary activities"—was not compensable because activities were not "integral and indispensable" to the employees' principal activities. 574 US at 35.

2.   *Oregon law: Statutes and administrative rules*

The question in this case is whether we should reach the same conclusion under Oregon law as the Supreme Court reached in *Integrity Staffing* under federal law. Put differently, the question is whether Oregon law mirrors federal law regarding what activities are compensable, which would lead to the same result in this case as in *Integrity Staffing*. To resolve that question, we must examine the relevant state statutes and administrative rules.

a.   Oregon's Statutes

In 1965, the Oregon legislature considered House Bill (HB) 1592, which provided for a $1.25 minimum wage for each hour of "work time." HB 1592, § 4(1). It further provided, "'Work time' includes both time worked and time of authorized attendance." *Id.* § 2(6). HB 1592 passed the House but was tabled in committee in the Senate and did not become law. Senate and House Journal 735 (1965); Minutes, Senate Committee on State and Federal Affairs, May 14, 1965, 1.

In 1966, Congress amended the FLSA. Act of Sept 23, 1966, Pub L 89-601, 80 Stat 830. The amendment extended the FLSA's coverage to certain categories of employees that had previously been excepted from coverage, including hospital and nursing home workers and some agricultural workers. *Id.* §§ 102(a), 203(a), 80 Stat at 831, 833. It also provided for increases in the federal minimum wage from $1.25 to $1.60 in steps. *Id.* § 301(a), 80 Stat at 838.

One month after the 1966 FLSA amendments went into effect, the Oregon legislature again considered a minimum wage bill, HB 1340 (1967). Like HB 1592, HB 1340 provided for a minimum wage for each hour of "work time" by employees, and it provided, "'Work time' includes both time worked and time of authorized attendance." HB 1340, §§ 2(9), 4(1). But HB 1340 applied only to employees who were not covered by the FLSA. *Id.* § 3(8).

The legislature recognized that, after the 1966 amendments to the FLSA, a smaller portion of employees in the state remained without minimum wage and overtime protections. Tape Recording, House Floor Debate, HB 1340, Apr 5, 1967, Tape 12, Side 2 (Representative Morris Crothers's floor statement discussing the expansion of coverage under the FLSA and explaining that "about the only people that are left to whom this will apply in the State of Oregon are people in small retail and service organizations"); *see also* Tape Recording, House Committee on Labor and Management, HB 1340, Mar 17, 1967, Tape 22 (Representative John Anunsen asking how many employees would be covered, and George Brown, who had been involved in crafting the bill, testifying that more employees had been "roped in" under the amended federal law than had previously been included when the legislature discussed HB 1592). HB 1340 provided state protections for some of those employees.

The exclusion of employees covered by the FLSA was significant. In his floor statement given at the bill's third reading and its passage by the House, Representative Crothers highlighted the import of the exemption. Tape

Recording, House Floor Debate, HB 1340, Apr 5, 1967, Tape 12, Side 2 ("[M]ore important than [the exemption for piece work employees in agriculture], * * * an exemption is given to any person subject to regulation under the federal Fair Labor Standards Act.").

	Legislators and witnesses who testified about HB 1340 explained that the bill would not apply to most employees in the state. As Representative Crothers explained in his floor statement, "A number of years ago a minimum wage bill in the State of Oregon would have had a very large economic impact on the state. It no longer does because the federal regulations have pretty largely preempted the field." Tape Recording, House Floor Debate, HB 1340, Apr 5, 1967, Tape 12, Side 2. Representative Crothers's estimated that "probably not more than 5,000 people in the State of Oregon would be covered by this minimum wage law." *Id.*; *see also id.* (Representative Joe Rogers noting that "this is not going to cover many employees"); *id.* (Representative Jason Boe commenting that "these few that are involved * * * are the citizens of Oregon who stand in most need of this help").

	Industry witnesses similarly recognized the bill's limited scope. One witness pointed out that "by far the vast amount of Oregon employees are covered by the federal minimum wage." Minutes, Senate Committee on Labor and Industries, Apr 26, 1967, 5 (summarizing testimony of Doug Heider of the Oregon Retail Council and Associated Oregon Industries); *see also* Tape Recording, House Committee on Labor and Management, HB 1340, Mar 13, 1967, Tape 20 (testimony of B.W. Fullerton of Malheur County Farm Labor Sponsoring Association, stating that, in Malheur County, the bill would apply only to a small number of employees).

	In addition, the Commissioner of Labor explained that many of the employees who were still not covered by the FLSA's wage and hour protections mistakenly believed that they were covered by those federal protections. Tape Recording, House Committee on Labor and Management, HB 1340, Mar 10, 1967, Tape 19. The commissioner also testified that the bill would provide only "the bare minimum protection to the wage earner." *Id.*

To summarize, in 1967 the Oregon legislature passed HB 1340 to provide state protections to a small number of employees so that they would have similar coverage to what many of them believed they already had under federal law.[2] Or Laws 1967, ch 596. The bill required compensation for "work time," and that requirement is now codified as ORS 653.025. The bill also provided that "'[w]ork time' includes both time worked and time of authorized attendance," and that provision is now codified as ORS 653.010(11), which is the statutory provision at issue in this case.[3]

### b.   BOLI's Administrative Rules

More than two decades later, in 1989, the Oregon legislature increased the state minimum wage above the federal minimum wage and expanded Oregon's wage statutes to cover employees already protected by the FLSA so that they would be entitled to Oregon's minimum wage. Or Laws 1989, ch 446, §§ 2, 4. Then, in 1990, BOLI promulgated administrative rules regarding compensable time. The first relevant BOLI rule is OAR 839-020-0004 (Rule 4). Rule 4 defines terms for the purposes of Oregon's wage and hour statutes and BOLI's administrative rules. In 1990, BOLI amended Rule 4 by adding a subsection to define "hours worked." As relevant here, Rule 4 provides:

"As used in ORS 653.010 to 653.261 and these rules, unless the context requires otherwise:

"* * * * *

"(19)  'Hours worked' means all hours for which an employee is employed by and required to give to the

---

[2] The state protections were not identical to the federal protections. As mentioned, the Oregon legislature considered HB 1592 in 1965, and that bill provided for a state minimum hourly wage of $1.25. HB 1592 § 4(1). The following year, Congress amended the FLSA to provide for an increase, in steps over time, of the federal minimum hourly wage from $1.25 to $1.60. Pub L 89-601, § 301(a), 80 Stat at 838. The next year, the Oregon legislature considered HB 1340, which, like HB 1592, provided for a state minimum hourly wage of $1.25. HB 1340 § 4(1). But, unlike the amended FLSA, HB 1340 did not provide for future increases in the minimum wage. *See id.* In that respect, HB 1340 was less beneficial to employees than the FLSA.

[3] The Oregon legislature has amended ORS 653.010 several times since its enactment in 1967. As definitions have been added, the subsections have been renumbered, but the substance of the definition of "work time" remains unchanged. The court quotes from the current version of the statute.

employer and includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place and all time the employee is suffered or permitted to work. 'Hours worked' includes 'work time' as defined in ORS 653.010(11)."

When BOLI added the "hours worked" definition to Rule 4, it also promulgated OAR 839-020-0040 through 839-020-0046 (Rules 40 through 46). Those rules are known collectively as the "Hours Worked series."[4] Rule 40 sets out the purpose of the series. It states that the series "deals with hours worked as defined by [Rule 4] and discusses principles involved in determining what constitutes working time for purposes of [Oregon's wage and hour statutes] ORS 653.010 to 653.261 and these rules." The remaining rules in the series govern the compensability of time that employees spend engaged in certain activities for which compensability might not be straightforward, because it might not involve the performance of the principal activities for which the employees are employed—specifically, time spent waiting (Rule 41), time spent sleeping (Rule 42), time spent in preparatory and concluding activities (Rule 43), time spent in lectures, meetings, or training programs (Rule 44), travel time (Rule 45), and time spent on other miscellaneous activities (Rule 46).

Of the Hours Worked series, the parties have focused on Rule 43. Rule 43 provides:

"(1) Preparatory and concluding activities are considered hours worked if the activities performed by the employee are an integral and indispensable part of a principal activity for which the employee is employed:

"(a) Example: A bank teller counts the till and arranges the work space in preparation for receiving customers. This activity is an integral and indispensable part of the principal activity for which the employee is employed and is included as hours worked;

"(b) Example: In connection with the operation of a lathe, the lathe operator oils, greases, or cleans the machine

---

[4] OAR 839-020-0047 (Rule 47), which applies the other rules of the Hours Worked series to agricultural employees, was later added to the series. OAR 839-020-0047 (July 25, 1990).

or installs a new cutting tool. Such activities are an integral and indispensable part of a principal activity and are included as hours worked;

"(c)   Example: Agricultural workers must dress in protective clothing and thoroughly clean up after their work with or around pesticides. The time spent in these activities is work time.

"(2)   These rules are applicable even where there exists a custom, contract or agreement not to pay for the time spent in such activity.

"(3)   Where a contract, custom or practice dictates certain activities to be considered as work time, even though not considered to be an integral and indispensable part of a principal activity, the time devoted to such activities will be considered as work time."

Thus, section 1 of Rule 43 provides that preparatory and concluding activities are compensable if they are "an integral and indispensable part" of an employee's principal activity, and section 3 provides that preparatory and concluding activities are compensable, "even though not considered to be an integral and indispensable part of a principal activity," "[w]here a contract, custom or practice" so dictates.

B.   *The Parties' Arguments*

Having reviewed the evolution of the relevant federal and state laws, we turn to the parties' arguments. The parties offer competing interpretations of BOLI's administrative rules and ORS 653.010(11), which defines "work time." As mentioned, the district court concluded that the security screenings at issue were not compensable. In doing so, the court relied on BOLI's administrative rules. It understood those rules to track federal law, and it specifically understood Rule 43 to limit the compensability of preparatory and concluding activities as the federal Portal-to-Portal Act does. In this court, plaintiff argues that (1) BOLI's rules do not limit compensation for preparatory and concluding activities, but, (2) if they do, they are inconsistent with ORS 653.010(11) and, therefore, are invalid. In response, defendants argue that (1) BOLI's rules track federal law and limit compensation for preparatory and concluding activities, and (2) they are consistent with ORS 653.010(11), which was

also intended to track federal law. To resolve the parties' arguments, we first construe BOLI's rules and then ORS 653.010(11).

## C.  *Construction of BOLI's Administrative Rules*

As we will explain, the BOLI rules mirror federal law; they use the same structure and language as federal law. Taken together, Rule 4 and Rule 43 parallel the FLSA, as modified by the Portal-to-Portal Act and case law interpreting that act. We so conclude based on the rules' text, context, and rulemaking history. *See Gafur v. Legacy Good Samaritan Hospital*, 344 Or 525, 532-33, 185 P3d 446 (2008).

### 1.  *Text*

Again, Rule 4 provides:

"As used in ORS 653.010 to 653.261 and these rules, unless the context requires otherwise:

"* * * * *

"(19)  'Hours worked' means all hours for which an employee is employed by and required to give to the employer and includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place and all time the employee is suffered or permitted to work. 'Hours worked' includes 'work time' as defined in ORS 653.010(11)."[5]

Rule 4 defines "hours worked" broadly; it is similar to the Supreme Court's interpretation of "hours worked" in its pre-Portal-to-Portal Act cases, *Tennessee Coal* and *Anderson*. In fact, Rule 4 uses the same language as *Anderson*, in which

---

[5] As initially promulgated, Rule 4's definition provided:

"'Hours worked' means all hours for which an employee is employed by and required to give to his/her employer and includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place and all time the employee is suffered or permitted to work."

OAR 839020-0004(13) (Feb 27, 1990). Although Rule 4's definition of "hours worked" did not initially refer to "work time," BOLI amended the rule five months later by adding the following sentence at the end: "'Hours worked' includes 'work time' as defined in ORS 653.010(1[1])." OAR 839 020-0004(14) (July 25, 1990). We do not understand that additional sentence to indicate a different rulemaking intent or change the meaning of "hours worked." Indeed, "hours worked" as we construe it herein includes "work time" as we understand it.

the Court held that "hours worked" "includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." 328 US at 690-91. Thus, Rule 4's definition of "hours worked" is similar to the pre-Portal-to-Portal-Act understanding of compensable time, which remains good law as modified by the Portal-to-Portal Act. *See IBP, Inc. v. Alvarez*, 546 US 21, 28, 126 S Ct 514, 163 L Ed 2d 288 (2005) ("Other than its express exceptions for travel to and from the location of the employee's 'principal activity,' and for activities that are preliminary or postliminary to that principal activity, the Portal-to-Portal Act does not purport to change this Court's earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday.'"); *see also* 29 CFR § 785.7 (quoting *Anderson* and explaining that "[t]he Portal-to-Portal Act did not change the rule except to provide an exemption for preliminary and postliminary activities").

Just as the original FLSA was modified by the Portal-to-Portal Act, Rule 4 is modified by the Hours Worked series, which specifies the compensability of certain activities, including, as relevant here, Rule 43, which governs "preparatory and concluding activities." Again, Rule 43 provides:

"(1)  Preparatory and concluding activities are considered hours worked if the activities performed by the employee are an integral and indispensable part of a principal activity for which the employee is employed:

"(a)  Example: A bank teller counts the till and arranges the work space in preparation for receiving customers. This activity is an integral and indispensable part of the principal activity for which the employee is employed and is included as hours worked;

"(b)  Example: In connection with the operation of a lathe, the lathe operator oils, greases, or cleans the machine or installs a new cutting tool. Such activities are an integral and indispensable part of a principal activity and are included as hours worked;

"(c)  Example: Agricultural workers must dress in protective clothing and thoroughly clean up after their work with or around pesticides. The time spent in these activities is work time.

"(2)   These rules are applicable even where there exists a custom, contract or agreement not to pay for the time spent in such activity.

"(3)   Where a contract, custom or practice dictates certain activities to be considered as work time, even though not considered to be an integral and indispensable part of a principal activity, the time devoted to such activities will be considered as work time."

Section 1 of Rule 43 provides that preparatory and concluding activities are considered hours worked *if* they "are an integral and indispensable part of a principal activity for which the employee is employed." Thus, section 1 appears to establish a condition that must be satisfied in order for preparatory and concluding activities to be compensable. Section 3 confirms that understanding. Section 3 provides that preparatory and concluding activities are compensable, "*even though not considered to be an integral and indispensable part of a principal activity,*" if a contract, custom or practice dictates that they be considered work time. Thus, reading Rule 43 as a whole, section 1 establishes a requirement that must be satisfied for preparatory and concluding activities to be compensable—specifically, the activities must be an integral and indispensable part of a principal activity—and section 3 creates an exception to that requirement when a contract, custom, or practice requires that the activities be compensable. The "even though" clause in section 3 shows that Rule 43 limits compensable activities. The clause has meaning only if section 3 sets forth the sole basis by which a preparatory or concluding activity that is not an integral or indispensable part of a principal activity could be compensable.[6]

The text of Rule 43 mirrors the Portal-to-Portal Act and subsequent case law. In the same way that section 4 of

---

[6] Plaintiff, and the dissent, 370 Or at 532-33, contend that Rule 43 simply lists examples of types of compensable activities. In plaintiff's view, the purpose of section 1 of the rule is to identify certain preparatory and concluding activities that are compensable (those that are integral and indispensable), but not to preclude compensability for other types of preparatory and concluding activities. Plaintiff's reading of the rule cannot be squared with the inclusion of section 3, which creates an exception to section 1. If section 1 was just an example, there would be no need for section 3 to include the phrase "even though not considered to be an integral and indispensable part of a principal activity."

the Portal-to-Portal Act provides specific guidance for compensation of "preliminary" or "postliminary" activities, Rule 43 provides specific guidance for compensation of "preparatory" or "concluding" activities. *Compare* Portal-to-Portal Act of 1947, § 4(a)(2), 61 Stat at 87, *with* Rule 43(1). As the Portal-to-Portal Act requires compensation for preliminary or postliminary activities as called for by "contract," "custom or practice," so too does Rule 43 require compensation for preparatory or concluding activities as called for by "contract, custom or practice." *Compare* Portal-to-Portal Act of 1947, § 4(b)(1) - (2), 61 Stat at 87, *with* Rule 43(3).[7] And Rule 43 incorporates the precise test that the Supreme Court set forth when interpreting the Portal-to-Portal Act in *Steiner*, and applied in *King Packing*, for determining whether an activity that takes place before or after a regular work shift is compensable: whether that activity is "an integral and indispensable part" of a principal activity for which the worker is employed. *Steiner*, 350 US at 256; *King Packing*, 350 US at 261; *see also* 29 CFR § 785.25 (discussing *Steiner*, *King Packing*, and the "integral and indispensable" test).[8]

2.  *Context*

The context provided by the Hours Worked series as a whole supports our conclusion that, as under federal law, Rule 43 provides a test for whether time spent in preparatory or concluding activities is compensable. As mentioned, Rule 40 sets out the purpose of the Hours Worked series. It

---

[7] The federal regulations also include analogues to sections 2 and 3 of Rule 43. *Compare* 29 CFR § 785.8 (providing that, with limited exceptions, hours worked are compensable irrespective of "custom, contract, or agreement not to pay for the time so spent"), *with* Rule 43(2) (providing that "[t]hese rules are applicable even where there exists a custom, contract or agreement not to pay for the time spent in such activity"); *compare* 29 CFR § 790.10(a) (providing that, under section 4(b) of the Portal-to-Portal Act, otherwise noncompensable "preliminary" or "postliminary" activities might nonetheless be compensable if the activity is compensable under contract, custom, or practice), *with* Rule 43(3) (providing similarly with respect to "preparatory" or "concluding" activities).

[8] Two of the examples provided in Rule 43 of compensable preparatory and concluding activities are the same or similar to those in federal law. The example in Rule 43(1)(b) involving a lathe operator appears in 29 CFR §§ 785.24 and 790.8(b)(1). And the example in Rule 43(1)(c) involving agricultural workers required to "dress in protective clothing and thoroughly clean up after their work with or around pesticides" is analogous to an example of workers in a chemical plant who must put on protective clothes provided in 29 CFR §§ 785.24 and 790.8(c).

states that the series "deals with hours worked as defined by [Rule 4] and discusses principles involved in determining what constitutes working time for purposes of [Oregon's wage statutes] ORS 653.010 to 653.261 and these rules." In other words, Rule 4 provides general definitions "unless the context requires otherwise," and the Hours Worked series identifies certain contexts that might require otherwise. Thus, the definition of "hours worked" in Rule 4 operates in tandem with the Hours Worked series, Rules 40-47. The rules in the series set forth various tests and guidelines that govern whether an employer is—or is not—required to compensate an employee for time the employee spends engaged in a specific activity; they provide guidance in contexts where determining compensability might not be straightforward. *See, e.g.*, Rule 41 (waiting time); Rule 42 (sleeping time); Rule 44 (lectures, meetings, and training programs); Rule 45 (travel time).

### 3. *Rulemaking History*

The rulemaking history of Rule 4 and Rule 43 confirms that the rules were intended to mirror the Portal-to-Portal Act. As mentioned, BOLI promulgated the Hours Worked series following the Oregon legislature's decision to extend Oregon's wage and hour laws to employees already covered by the FLSA. During BOLI's rulemaking, Oregon businesses and attorneys asked BOLI's Wage and Hour Division ("the division") to adopt rules that would align with federal law as closely as possible.[9] Commenters urged the division to do so in order to "provide consistency and ease of administration"[10] and to avoid "extensive litigation by

---

[9] *See, e.g.*, Presiding Officer's Report, *In the Matter of Adoption and Amendment of Rules Pertaining to Payment of Minimum Wages and Overtime Pay* (Bureau of Labor and Industries) (summarizing hearings from October and November 1989), 4 (summarizing Exhibit I, a letter from Jerry E. Butler of NORPAC Foods, Inc., "urg[ing] the Bureau to adopt existing federal standards"); *id.* at 7 (summarizing Exhibit AA) (similar); *id.* (summarizing Exhibit DD) (similar); *id.* at 10 (summarizing Exhibit PP) (similar); *id.* (summarizing Exhibit RR) (similar); *id.* at 12 (summarizing Exhibit b) (similar).

[10] Presiding Officer's Report 3 (summarizing Exhibit F, a letter on behalf of the Oregon Hospital Association); *see also id.* at 2 (summarizing Exhibit D, a letter on behalf of Eugene Sand and Gravel, Inc. explaining that "small business will be substantially impacted through having to comply with two laws which conflict in many areas"); *id.* at 4 (summarizing Exhibit K, a letter from Karen Zimmer of Croman Corp. "urge[ing] the Bureau to adopt complete federal

employers regarding what the differences between the pro-posed rules and Federal regulations mean."[11] In response to such comments, the division amended several proposed rules to bring them more in line with federal regulations.[12] The division expressly recognized where it declined to adopt federal regulations and explained its basis for doing so.[13] The division did not indicate such an intent to diverge from federal law regarding what types of activities are compen-sable. Accordingly, the division's intent to mirror federal law is clear. In rejecting several proposed changes, the division explained that its "desire *** to mirror federal law as closely as possible" meant that, "when suggestions were made to change, expand, or narrow the rules and that change would have the effect of creating a different standard or interpretation at the state level, the decision was made that these modifications not be included." Presiding Officer's Report 28.

In summary, the text, context, and rulemaking his-tory of BOLI's Rule 4 and Rule 43 establish that the rules were intended to align with federal law, under which pre-paratory and concluding activities are compensable only if (1) the activities are an integral and indispensable part of

---

regulations to avoid confusion"); *id.* at 5 (summarizing Exhibit M, a letter noting that mirroring federal regulations "would minimize confusion and avoid two sep-arate calculations for compliance with both laws").

[11] Presiding Officer's Report 3 (summarizing Exhibit H, a letter on behalf of Miller, Nash, Wiener, Hager and Carlsen, Attorneys at Law); *see also id.* at 10 (summarizing Exhibit SS, a letter warning of litigation resulting from disparate requirements); *id.* (summarizing Exhibit TT) (similar).

[12] For example, in response to comments about a proposed version of OAR 839-020-0005, BOLI remarked:

"It was suggested by many that the Bureau adopt the language of the federal regulations in regard to these particular definitions stating that it would add to ease of understanding and interpretation. The Division currently uses the federal regulations regarding those definitions when they are not determined to be in conflict with state law. *** Federal language and format have been adopted to the extent possible as allowed by law."

Presiding Officer's Report 24.

[13] For example, the division rejected a proposal that it adopt "on a wholesale basis the federal regulations dealing with overtime," explaining that doing so was unnecessary because (1) "[t]he Division currently uses the CFRs as a guide and relies on federal interpretation where these regulations are not contrary to statute"; and (2) "[a] significant number of the regulations at the federal level are contrary to the state statute." Presiding Officer's Report 28.

an employee's principal activities or (2) contract, custom, or practices requires that they be compensable. The text of Rule 43 shows that the rule limits the compensability of preparatory and concluding activities, the context of the Hours Worked series supports that reading of the text, and the rulemaking history shows that BOLI intended its rules to align with federal law as closely as possible. In addition, nothing in the history indicates that BOLI intended to diverge from federal law regarding what types of activities are compensable.[14]

D.  *Construction of ORS 653.010(11)*

We turn to plaintiff's alternative argument that, if Rule 43 limits compensability for preparatory and concluding activities, it is inconsistent with ORS 653.010(11), which defines "work time." As we will explain, we conclude that BOLI's rules are not inconsistent with that statute because, like BOLI's rules, the statute's definition of "work time" was intended to mirror federal law.

As mentioned, ORS 653.010(11) provides, "'Work time includes both time worked and time of authorized attendance." Plaintiff argues that the statute requires compensation for time spent in security screenings, because it is "time of authorized attendance." To determine the legislature's intended meaning of "time of authorized attendance," we look to the statute's text and context, as well as helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

1.  *Text*

The text of ORS 653.010(11) indicates that "work time" covers two distinct categories of activities: (1) "time worked" and (2) "time of authorized attendance." *See* ORS 174.010 (providing that, in the construction of a statute, a court may not "omit what has been inserted," and "where there are several provisions or particulars such construction

---

[14] We conclude that BOLI intended the compensability of time spent in preparatory and concluding activities to mirror the compensability of such time under the then-existing federal law. We do not mean to suggest that all of BOLI's concurrently promulgated rules were meant to match federal law. To the contrary, BOLI specifically identified areas of departure from federal law.

is, if possible, to be adopted as will give effect to all"). However, the legislature did not define "time worked" or "time of authorized attendance."

The meaning of "time of authorized attendance" is ambiguous. The text, viewed in isolation, could plausibly take on broad meaning. Plaintiff has floated several alternative constructions, including that "time of authorized attendance" means any time an employee is permitted to be on the employer's premises and that "time of authorized attendance" means "the act or state of being in waiting" when "sanctioned by authority." Defendants, on the other hand, have offered several more narrow meanings, including that "time of authorized attendance" means "time employees must be present waiting for an assignment"; time spent "attending lectures, meetings, training programs, and similar activities"; or "periods within the workday—between employees' first principal activity of the day and their last principal activity of the day."

Because both "authorized" and "attendance" are words of common usage, we consider their dictionary definitions. Both words are defined using numerous alternative senses, leading to disparate results.[15] "Authorized attendance" could mean approved presence, approved waiting, approved service, or approved attendance at an event. None of the dictionary definitions outweighs the others based on the text of the statute alone. Therefore, we turn to the context and legislative history.

---

[15] The dictionary definitions of "authorized" are as follows:

"**1** *archaic* **:** having authority **:** marked by authority **:** recognized as having authority **2 :** endowed with authority <an [authorized] representative> **3 :** sanctioned by authority **:** APPROVED <an [authorized] biography> <an [authorized] translation>[.]"

*Webster's Third New Int'l Dictionary* 147 (unabridged ed 2002). And the definitions of "attendance" are the following:

"**1 :** the act or fact of attending: as **a :** the act or state of being in waiting **:** service esp[ecially] at court or at a hospital <a physician in [attendance]> **b :** a being present **:** PRESENCE <[attendance] at a play> **2 :** the persons attending: **a** *obs* **:** a body of attendants **:** RETINUE <the king, with his [attendance] of court officials> **b :** the persons or number of persons present (as at a public performance or a session of school) <the broadcasting of plays . . . does not seem to diminish the [attendance]s at original performances—Joseph Trenaman>[.]"

*Id.* at 140.

2. *Context*

At the same time that the Oregon legislature defined "work time," it defined "employ" in the same statute, and the statute's definition of "employ" provides relevant context. *Force v. Dept. of Rev.*, 350 Or 179, 188, 252 P3d 306 (2011) ("'[C]ontext' includes, among other things, other parts of the statute at issue."). Under the statute, "'[e]mploy' includes to suffer or permit to work * * *." ORS 653.010(2) (1967).[16] The FLSA similarly prescribed that "'[e]mploy' includes to suffer or permit to work." 29 USC § 203(g) (1964). The Oregon legislature derived the definition of "employ" from federal law. *See Cejas Commercial Interiors, Inc. v. Torres-Lizama*, 260 Or App 87, 97-99, 316 P3d 389 (2013) (examining the text and legislative history and concluding that the Oregon legislature adopted "the FLSA's definition of 'employ'" as "an established term of art from federal law"). And both jurisdictions define "employ" in terms of "work." Thus, it is likely that the legislature considered the act of employing to cover the same scope of work. In other words, an employer "employs" workers for the same activities under both state and federal law. Accordingly, the parallel definitions of "employ" support a narrower construction of "work time" that mirrors the federal understanding of compensable time.

Federal law also provides relevant context because Oregon's wage statutes were an "offspring" of federal law. *See Badger v. Paulson Investment Co., Inc.*, 311 Or 14, 21, 803 P2d 1178 (1991) (looking to federal law for guidance when the 1967 Oregon law was "an offspring of federal security laws and regulations going back to the 1930s"). Although the Oregon legislature did not adopt word-for-word every portion of the FLSA, the legislature drew in large measure from federal law.[17] Accordingly, the well-established federal

---

[16] When enacted, the full definition read, "'Employ' includes to suffer or permit to work; however, 'employ' does not include permitting voluntary service without compensation to a religious or charitable nonprofit institution." ORS 653.010(2) (1967).

[17] *Compare* ORS 653.010(2) (1967) ("'Employ' includes to suffer or permit to work * * *."), *with* 29 USC § 203(g) (1964) ("'Employ' includes to suffer or permit to work."); *compare* ORS 653.010(7) (1967) (defining "outside salesman"), *with* 29 CFR § 541.500 (1967) (similarly defining "outside salesman"); *compare* ORS

understanding of compensable time informs our analysis of ORS 653.010(11)'s definition of "work time" and supports a construction in line with federal law.

### 3. *Legislative History*

Finally, we examine the relevant legislative history. As recounted above, the Oregon Legislature enacted HB 1340 to establish a state minimum wage the year after Congress had expanded the FLSA. HB 1340 did not cover employees that were covered by the FLSA. It was intended to fill a gap in the FLSA's coverage by providing state protections to a small number of employees in the state so that they would have protections similar to what many of them mistakenly believed they already had under federal law. Nothing in the legislative history of the bill indicates that the legislature intended to require compensation for activities that were not compensable under the FLSA, as modified by the Portal-to-Portal Act. To the contrary, the Commissioner of Labor testified that the bill would provide only "the bare minimum protection to the wage earner." Tape Recording, House Committee on Labor and Management, HB 1340, Mar 10, 1967, Tape 19. Thus, the legislative history indicates that the legislature did not intend to provide more protections than federal law, much less expand compensability to activities that had not been compensable under

---

653.020(3) (exempting "[a]n individual engaged in administrative, executive or professional work who \*\*\* [e]xercises discretion and independent judgment"), *with* 29 USC § 213(a)(1) (1964) (exempting an employee employed in an "executive, administrative, or professional capacity"); 29 CFR § 541.2 (1967) (explaining that an employee employed in an "administrative \*\*\* capacity" includes an employee "[w]ho customarily and regularly exercise discretion and independent judgment"); *compare* ORS 653.020(4) (1967) (exempting "[a]n individual employed by the United States, or this state, or a political subdivision"), *with* 29 USC § 203(d) (1964) (excluding "the United States or any State or political subdivision of a State" from the definition of "employer"); *compare* ORS 653.060 (1967) (making it unlawful to "discharge or in any other manner discriminate against any employe[e]" "[b]ecause the employe[e] has made complaint that he has not been paid wages," "[b]ecause the employe[e] has caused to be instituted or is about to cause to be instituted any proceedings" related to the minimum wage laws, or "[b]ecause the employe[e] has testified or is about to testify in any such proceedings"), *with* 29 USC § 215(a)(3) (1964) (making it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding").

federal law since the enactment of the Portal-to-Portal Act.[18]

Moreover, requiring compensation for those activities would have led to two different rules for determining compensable time, one for employees subject to the FLSA and another for employees subject to state wage laws. There is no indication in the legislative history that the legislature intended that result.

To be certain, if the Oregon legislature had wanted to expand the scope of compensable time beyond the post-Portal-to-Portal-Act federal scope, it could have done so. But, if the legislature had wanted to diverge from federal law, we would expect it to have done so explicitly given the well-established understanding of what activities were compensable under federal law at the time. But it did not, and nothing in the legislative history of HB 1340 indicates that anyone intended the bill to change what types of activities are compensable.

Instead, the majority of the legislative discussion revolved around *who* should be protected under the law and who should be exempt. The testimony, debate, and amendments focused on whether agricultural workers, piece-rate workers, and outside salespeople should be included under the bill. *See, e.g.*, Tape Recording, House Committee on Labor and Management, HB 1340, Mar 10, 1967, Tape 19 (Bureau of Labor chief counsel testifying in favor of removing the exemption for agricultural workers); *id.* (testimony from George Brown, the drafter of the "outside salesman" definition and exemption); Tape Recording, House Committee on Labor and Management, HB 1340, Mar 17, 1967, Tape 22 (passing an amendment with the definition of "outside salesman"); Tape Recording, House Committee on Labor and Management, HB 1340, Mar 20, 1967, Tape 23 (passing an amendment clarifying that piece-rate workers were exempt); Tape Recording, House Floor Debate, HB 1340, Apr 5, 1967, Tape 12, Side 2 (statement from Representative

---

[18] Neither the definition of "work time" nor the legislature's intent changed when Oregon eventually extended coverage under state law to those already protected by the FLSA with the passage of Senate Bill 335 (1989). Or Laws 1989, ch 446.

William Stevenson opposing exclusion of agricultural workers); Minutes, Senate Committee on Labor and Industries, Apr 24, 1967, 1 (testimony from Sen Don Willner discussing exclusion of piece-rate workers and agricultural workers). The debate did not cover *what* activities should be covered. Nothing in the legislative history suggests that the bill would institute a new, more expansive definition of "work time" that would change existing law to require compensation for all preliminary and postliminary activities, in stark contrast to federal law.[19]

Accordingly, we conclude that the Oregon legislature did not intend to adopt a broad definition of compensable time above and beyond the existing federal understanding and that Oregon's definition of "work time" aligns with federal law. The text of the "work time" definition does not provide a definitive answer; it can be read broadly or narrowly. But the context and legislative history resolve the ambiguity. The context—the definition of "employ" that matches federal law and the longstanding federal understanding of compensable time—suggests that the legislature intended a narrow meaning that aligns with federal law. And the legislative history supports a construction that mirrors federal law. The wage statutes filled a gap in the FLSA's coverage, providing similar coverage to a small group of Oregon workers. Nothing in the legislative history indicates that the Oregon legislature intended to diverge from federal law regarding what types of activities are compensable.

## III.   CONCLUSION

To summarize, we conclude that the Oregon statutes and administrative rules regarding what activities are compensable were intended to mirror federal law. The structure and text of the relevant administrative rules mirror federal law, the context of the Hours Worked series supports reading Rule 43 as a test for whether preparatory and concluding activities are—or are not—compensable,

---

[19] We note that the legislators who adopted the statutory definition of "work time" acted with knowledge, or at least notice, of federal law. *See, e.g.*, Tape Recording, House Committee on Labor and Management, HB 1340, Mar 10, 1967, Tape 19 (discussing the 1966 FLSA amendments); Tape Recording, House Floor Debate, HB 1340, Apr 5, 1967, Tape 12, Side 2 (floor statement explaining the FLSA's 1966 amendments).

and the rulemaking history indicates that the rules were intended to align with federal law as closely as possible. Likewise, Oregon's statutory definition of "work time" was intended to mirror federal law. Although the text of the definition is ambiguous, the context and legislative history reveal the legislature's limited purpose to fill a gap in coverage. Nothing indicates an intent to diverge from federal law, which had precluded compensability for certain activities—including time spent in preliminary and postliminary activities that are not integral and indispensable parts of an employee's principal activities nor covered by contract, custom, or practice—since the enactment of the Portal-to-Portal Act. Therefore, just as under federal law, whether time spent waiting for and undergoing mandatory security screenings on an employer's premises is compensable under Oregon law depends on whether the screenings are either (1) an integral and indispensable part of an employee's principal activities or (2) compensable as a matter of contract, custom, or practice.

We recognize that plaintiff's situation—not receiving compensation for the time she was required to be on her employer's premises for the employer's benefit—certainly raises a policy question whether all employees should be compensated for time spent in mandatory security screenings like those at issue in this case. Now that the scope of compensable time under existing Oregon law is clear in that regard, plaintiff may bring the issue to the legislature's attention and the legislature may, if it chooses, depart from federal law and adopt its own standard for compensable time, consistent with any limits imposed by state and federal law.

The certified question is answered.

**FLYNN, J.,** dissenting.

At issue in this case is the meaning of administrative rules that define the term "hours worked" for purposes of the requirement that employers pay their employees at least minimum wage for "each hour worked." We typically determine the meaning of administrative rules by employing "essentially the same framework that we employ when interpreting a statute"—we consider primarily "the text of

the rule in its regulatory and statutory context." *Noble v. Dept. of Fish and Wildlife*, 355 Or 435, 448, 326 P3d 589 (2014). When I follow that methodology for the regulations at issue here, I reach a different conclusion than does the majority about what the drafters of the rule intended. I therefore dissent.

Starting with the relevant statutory context, the legislature has created a requirement that, "[e]xcept as provided" otherwise by statute or by administrative rules, employers pay a specified minimum wage "for each hour of work time that the employee is gainfully employed." ORS 653.025(1). And "unless the context requires otherwise," the term "'work time' includes both time worked and time of authorized attendance." ORS 653.010(11). The legislature has also authorized the Commissioner of the Bureau of Labor and Industries to "[m]ake such rules as the commissioner considers appropriate to carry out the purposes of ORS 653.010 to 653.261," ORS 653.040(3), and the commissioner has promulgated rules to further clarify what activities entitle an employee to be paid wages. Because I agree with the majority's conclusion—although not necessarily its reasoning—that the rules at issue here are not inconsistent with ORS 653.010, 370 Or at 521, I also answer the certified question by determining the meaning of the commissioner's rules.

The pertinent rules specify that an "employer is required to pay each employee" no less than the minimum wage "for each hour worked by the employee." OAR 839-020-0010(1). And they define "hours worked" as "includ[ing]":

"all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place and all time the employee is suffered or permitted to work. 'Hours worked' includes 'work time' as defined in ORS 653.010(11)."

OAR 839-020-0004(19) (Rule 4(19)). In other words, the rule identifies multiple categories of time that are "hours worked" for which the employee must be compensated, one of which is "time during which an employee is necessarily required to be on the employer's premises." The phrase "necessarily required" is not defined, but those are terms of ordinary

meaning. And under all ordinary meanings of which I am aware, the definition would cover time that the employer requires its employees to spend on its premises performing security screenings that are a condition of entering and leaving the area in which the employees perform their principal work activities. Although a factfinder might find that some or all of such time is not in fact "necessarily required," we are addressing the meaning of the administrative rules in response to a certified question, not answering whether plaintiff will ultimately prevail on the facts.

The majority recognizes that Rule 4(19) "defines 'hours worked' broadly." 370 Or at 515. But the majority understands that definition to be limited by another rule, which specifies that "[p]reparatory and concluding activities are considered hours worked if the activities performed by the employee are an integral and indispensable part of a principal activity for which the employee is employed." OAR 839-020-0043(1) (Rule 43(1)). That is, the majority understands the effect of the more specific provision to be a "modification" of the definition of "hours worked" so that Rule 4(19) would be read as providing: "<u>except as limited by Rule 43,</u> 'hours worked' *** includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place."

In my opinion, however, nothing in the text or context of either rule suggests that the drafters intended Rule 43 to function as a limitation on what qualifies as compensable "hours worked." Rule 4(19) does not indicate that the definition of "hours worked" is limited or modified by the principles articulated in Rule 43. Nor does Rule 43 provide that "[p]reparatory and concluding activities are considered hours worked *only* if" the activity is "an integral and indispensable part of a principal activity for which the employee is employed." Instead, another rule explains that Rule 43 merely "deals with" the definition of "hours worked" in Rule 4(19) and "*discusses principles* involved in determining what constitutes working time." OAR 839-020-0040(1) (emphasis added). In short, Rule 4(19) tells us that "hours worked" includes—among other things—"all time during which an employee is necessarily required to be on the employer's

premises, on duty or at a prescribed work place"; and Rule 43 explains the principle that "preparatory and concluding activities" will always constitute "hours worked" if they are either "an integral and indispensable part" of the employees' principal activities or compensable as a matter of "contract, custom or practice"—regardless of whether the employee is "necessarily required to" perform them "on the employer's premises."

The majority reaches a contrary conclusion only by turning to enactment history indicating that some commenters urged the agency to adopt rules that would "provide consistency and ease of administration" and possibly would avoid litigation by closely tracking federal law—which we now know would not require Amazon to compensate employees for the time spent waiting for and participating in mandatory screenings on the employer's premises. *See Integrity Staffing Solutions, Inc. v. Busk*, 574 US 27, 35, 135 S Ct 513, 190 L Ed 2d 410 (2014) (identifying employer's security screenings as "noncompensable postliminary activities"). The summary of the exhibits and testimony that were provided during the rulemaking process indicates that comments on the proposed rules came overwhelmingly from employers and advocacy organizations for employers, who—understandably—opposed the burden of any wage requirements beyond those that the Federal Fair Labor Standards Act (FLSA) already imposed. *See* Presiding Officer's Report, *In the Matter of Adoption and Amendment of Rules Pertaining to Payment of Minimum Wages and Overtime Pay* (Bureau of Labor and Industries) (summarizing hearings from October and November 1989), 2-20.

But that one-sided commentary does not mean that the agency intended its rules to reflect the wishes of employers. For example, in the context of explaining why the agency had rejected changes that the employers were requesting to overtime rules that were part of the same rule-making process, the same presiding officer report explains that the agency was *not* simply implementing the wishes of employers that Oregon law track the federal law:

"The Division recognizes that the state and federal rules regulating these calculations differ significantly. It is understood that this will have the effect of placing the

employer in the position of making them [act] differently in order to comply with both laws, but there does not appear to be a workable solution in regard to this problem without there first being changes made in the law."

*Id*. at 28. Ultimately, however, the report does not meaningfully address whether the agency intended the definition of "hours worked" to mean what the words say. The report does not recommend approval or rejection of any relevant change to either that definition or to the "preparatory and concluding activities" rule. Thus, nothing in the adoption history of the rules persuades me to ignore the words that the agency chose in adopting the controlling standards for which employee activities constitute time that the employer must compensate.

In my opinion, those words are the best indication that the agency did not intend to mirror the federal standard for whether activities like those at issue here are compensable. First, the agency defined compensable time as including time that the employee is "necessarily required to be on the employer's premises," which had been repudiated as the federal standard. As the majority recognizes, that definition tracks the standard that the United States Supreme Court originally used—prior to the Portal-to-Portal Act— to determine the time for which employees were entitled to be paid wages under the FLSA. *See* 370 Or at 507 (describing Congress's adoption of the "Portal-to-Portal Act," Pub L 80-49, 61 Stat 84 (1947) (codified as amended at 29 USC §§ 251-262), in response to the Court's interpretation of the FLSA); *see also Anderson v. Mt. Clemens Pottery Co.*, 328 US 680, 690-91, 66 S Ct 1187, 90 L Ed 1515 (1946) (describing the FLSA requirement that employees be paid for "hours worked" as reaching "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace"). But well before Oregon adopted the rules at issue here, Congress passed the Portal-to-Portal Act, to "repudiate *Anderson*'s holding" and eliminate a focus on whether "an employer required an activity." *Integrity Staffing*, 574 US at 36. I am unable to conclude that the agency intended to mirror federal law when it adopted a definition of "hours worked" that was directly contrary to federal law.

Typically, that historical context would significantly inform our understanding of an enactment—we would presume that the commissioner, when choosing a standard for "hours worked," was aware that the chosen standard was that announced in federal cases that predated the Portal-to-Portal Act and was *not* the current federal standard. *Cf. Lindell v. Kalugin*, 353 Or 338, 355, 297 P3d 1266 (2013) (explaining that, "as a general rule, when the Oregon legislature borrows wording" from another jurisdiction, "there is a presumption that the legislature borrowed the controlling case law interpreting the statute along with it"); *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 593, 341 P3d 701 (2014) ("Court decisions that existed at the time that the legislature enacted a statute—and that, as a result, it could have been aware of—may be consulted in determining what the legislature intended in enacting the law as part of the context for the legislature's decision.").

Moreover, although Rule 43 borrows somewhat from federal law in describing "preparatory and concluding" activities, the rule departs from the federal law in a significant way. The Portal-to-Portal Act uses exclusionary wording to describe compensable "preliminary" or "postliminary" activities:

"(a) Except as provided in subsection (b), no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, \* \* \* on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee \* \* \*

"\* \* \* \* \*

"(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."

The United States Supreme Court essentially carved out an exception to that general exclusion for "activities performed either before or after the regular work shift": Such activities

are *included* as compensable time if they "are an integral and indispensable part of the principal activities for which covered workmen are employed." *Steiner v. Mitchell*, 350 US 247, 256, 76 S Ct 330, 334, 100 L Ed 267 (1956).

When Oregon adopted Rule 43, it picked up the inclusion from *Steiner*—preparatory and concluding activities *are* compensable "if the activities performed by the employee are an integral and indispensable part of a principal activity for which the employee is employed." OAR 839-020-0043(1). But Oregon did not adopt a rule to track the Portal-to-Portal Act's general exclusion for such activities. In other words, under the federal approach, there is a rule of inclusion for a specific range of preparatory and concluding activities, but such activities are otherwise expressly excluded from what qualifies as compensable work—regardless of whether the employee is "necessarily required" to perform them on the employer's premises—because the Portal-to-Portal Act had abrogated that test. By contrast, the rules that govern compensable work in Oregon mirror the federal rule of inclusion for a specific range of preparatory and concluding activities, but do not mirror the federal requirement that such activities are otherwise excluded from hours worked. On the contrary, Oregon chose to define "hours worked" as mirroring the old federal test—as including all activities that the employee is "necessarily required" to perform them on the employer's premises. Neither defendant nor the majority has offered a persuasive explanation for why Oregon's rules mirror a test that the Portal-to-Portal Act had rejected if that is not the test that the agency intended to adopt. Had the agency, instead, intended to adopt the Portal-to-Portal Act's broad exclusion for most activities performed prior to or subsequent to the principal work activities, it would have been easy for the agency to do so. And I am unwilling to ignore that omission.

For those reasons, I respectfully dissent.